UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CECILIA BALDAZO, an individual, | ) |
| | ) |
| Plaintiff, | )     3:12-cv-00532-LRH-VPC |
| | ) |
| v. | ) |
| | )     ORDER |
| ELKO COUNTY, ex rel. its SHERIFF'S | ) |
| DEPARTMENT, a political subdivision of the | ) |
| State of Nevada; MARVIN MORTON, an | ) |
| individual; BRAD HESTER, an individual; | ) |
| and RICK KEEMA, an individual, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This is an employment dispute. Before the court is Elko County, Marvin Morton, and Rick Keema's Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment (#22[1]), which defendant Brad Hester has joined (#24). Plaintiff Cecilia Baldazo has responded (#30), and Defendants have replied (##33, 34).

**I.      Facts and Procedural History**

Plaintiff Baldazo, a former sheriff's deputy, lodges claims under federal law for discrimination and retaliation and a claim under state law for negligent training against her former employer, the Elko County Sheriff's Department, and its supervisory employees. Baldazo alleges that Defendants discriminated against her as a woman and as a lesbian.

---

[1]Refers to the court's docket entry number.

1    Baldazo was an employee of the Sheriff's Department from February 9, 2009 until April 21,

2    2011, having made her way from corrections work to patrol duty. (Complaint #1, ¶ 1.) On

3    November 13, 2009, Baldazo's supervisor, Lieutenant Morton, received a protective order

4    application from Baldazo's ex-girlfriend. Morton initiated an internal investigation and delayed

5    Baldazo's transfer to a patrol position in Jackpot, Nevada. Even though the protective order

6    application was denied, Morton sustained the adverse findings of the internal investigation. Morton

7    was later overruled by the Undersheriff. (*Id*. at ¶¶ 6-13.)

8    Baldazo was eventually transferred to Jackpot, where she experienced problems with her

9    immediate superior, Sergeant Hester. First, in December 2011, Hester (who knew Baldazo's sexual

10   orientation) told a joke to Baldazo about a gay horse and introduced Baldazo to numerous Jackpot

11   residents as "the new cop chick." (*Id*. at ¶¶ 16-19.) Hester also described a Jackpot businesswoman

12   as "the head chick" to Baldazo. Second, Hester allegedly took Baldazo on a ride to "look for elk,"

13   and Hester became angry when Baldazo fell asleep, causing Baldazo to receive a formal "letter of

14   instruction" (presumably a type of formal discipline). Third, Baldazo alleges that Hester

15   commented that police work was "man's work" and remarked derogatorily about homosexuals.

16   Finally, Baldazo claims that Hester intentionally scheduled Baldazo to work by herself or otherwise

17   left Baldazo's assigned patrol understaffed. (*Id*. at ¶¶ 20-23.)

18   Baldazo's final allegations concern her termination. Defendants received a complaint that

19   Baldazo had inappropriately used her police authority in a personal conflict involving Baldazo's

20   partner's ex-husband. Morton initiated an internal investigation, which involved an initial interview

21   on January 27, 2011. Baldazo missed the interview due to an ankle injury, and the interview was

22   rescheduled for late February. Though the directive instructing Baldazo to appear for her interview

23   required her to appear in her uniform, she did not read this directive completely, noting only the

24   time and place of the interview. Baldazo also alleges that Hester authorized Baldazo to work the

25   graveyard shift the night of the interview, and Baldazo inferred that she could appear for her

26   interview in the clothes she would wear for her later shift—clothes that were not her official

uniform. When Morton and another officer, Sergeant McKinney, asked Baldazo why she was out of uniform when she appeared for her interview, Baldazo explained that she was working the graveyard shift following the interview. However, Hester had scheduled a different officer to work the graveyard shift. When Morton found out that Baldazo was not, in fact, scheduled to work the graveyard shift that night, he initiated yet another investigation, accusing Baldazo of insubordination (for failing to wear her uniform) and untruthfulness (for allegedly lying about the graveyard shift). This investigation resulted in Baldazo's termination. (*Id*. at ¶¶ 25-37.) Baldazo's only mention of defendant Undersheriff Keema is Keema's alleged refusal to investigate Hester for untruthfulness in connection with her termination. (*Id*. at ¶ 38.)

Baldazo's termination followed a three-day arbitral proceeding presided over by a law-trained arbiter. Under the Sheriff's Department's collective bargaining agreement ("CBA") with the Elko County Deputy Sheriff's Association, Baldazo was compelled to challenge her termination in arbitration. However, the CBA provided both that "[t]he arbitrator's authority is limited to the application and interpretation of the provisions of the CBA" and that employment discrimination claims were not subject to arbitration. (*See* Defendants' Motion #22, Ex. 2, Arts. 4, 13.) In the arbitral proceedings, both Elko County and Baldazo were represented by counsel and both presented briefs and witness testimony. The arbiter ultimately found, in a thirty-two page written disposition, that Elko County had "just cause" to terminate Baldazo for her insubordination and her untruthfulness. (*See id.*, Ex. 1.) Elko County confirmed this disposition in Nevada State Court. (*Id.*, Ex. 2.)

Baldazo states her discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1983 (through the Equal Protection Clause of the Fourteenth Amendment). Baldazo also alleges that Elko County is liable for its deliberate indifference to Baldazo's rights and that Elko County is liable under state law for its negligent training of its supervisory personnel. Defendants now move for judgment as a matter of law or, in the alternative, summary judgment.

///

3

## II.     Legal Standard

Defendants base the part of their Motion that calls for judgment as a matter of law on the preclusive effect of Baldazo's termination proceedings. They base the part of their Motion that calls for summary judgment on the evidence supporting the findings of those proceedings, in which an arbiter concluded that Defendants terminated Baldazo for just cause. Baldazo, for her part, opposes consideration of Defendants' Motion as one for summary judgment because evidence outside of that upon which the arbiter relied is absent and because "the parties have stipulated to a stay of discovery pending a ruling on the instant motion."

While it is true that the parties filed a stipulation to stay discovery, the court never approved it. The reason is simple: under the court's Scheduling Order, the stipulation was late by nearly one and one-half months, and no "good cause" has been shown warranting an exception to the Scheduling Order's deadlines. *See* Fed. R. Civ. P. 16(b)(4). Nor would a formally approved stay prevent the court from addressing Defendants' Motion as one for summary judgment: such a motion may be made *at any time* before thirty days after the close of discovery, Fed. R. Civ. P. 50(c), and a party may oppose a premature motion for summary judgment under Federal Rule of Civil Procedure 56(d). Baldazo has not taken advantage of Rule 56(d). Finally, Defendants' Motion came five months after their Answer, the stipulation to stay discovery was filed concurrently with this Motion, and the discovery period had only one month left to go. Therefore, Defendants' Motion is not premature, and Baldazo's challenge on this basis fails.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154

1   (9th Cir. 2001).

2        The moving party bears the burden of informing the court of the basis for its motion, along

3   with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,

4   477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

5   must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

6   find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

7   1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

8        To successfully rebut a motion for summary judgment, the non-moving party must point to

9   facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson*

10  *School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect

11  the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

12  248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment

13  is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material

14  fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for

15  the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of

16  evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;

17  there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

18  **III.   Discussion**

19       Defendants argue first that the court is precluded from addressing Baldazo's discrimination

20  claims because the arbitrator has already decided the issue of discrimination against Baldazo.

21  Second, Defendants contend that, even if preclusion does not apply, summary judgment is

22  appropriate.

23       **A.  Issue Preclusion**

24       Issue preclusion bars successive litigation of an (actually litigated, necessarily decided)

25  issue of law or fact even if the issue recurs in the context of a different claim. *See Taylor v.*

26  *Sturgell*, 553 U.S. 880, 892 (2008). "Since the confirmation of a private arbitration award by a state

court has the status of a judgment, federal courts must, as a matter of full faith and credit, afford the confirmation the same preclusive consequences as would occur in state court." *In re Khaligh*, 338 B.R. 817, 824 (B.A.P. 9th Cir. 2006) *aff'd,* 506 F.3d 956 (9th Cir. 2007). In Nevada, issue preclusion requires that "(1) an issue be identical, (2) the initial ruling was final and on the merits, (3) 'the party against whom the judgment is asserted' was a party or in privity with a party in the prior case, and (4) 'the issue was actually and necessarily litigated.'" *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009) *holding modified by Garcia v. Prudential Ins. Co. of Am.*, 293 P.3d 869 (Nev. 2013) (quoting *Five Star Capital Corp. v. Ruby,* 194 P.3d 709, 713 (Nev. 2008)). While "[c]ollateral estoppel [that is, issue preclusion] applies to arbitration . . . when a collective bargaining agreement is at issue, the arbitrator's award 'must be based on the collective bargaining agreement' and the deference bestowed upon arbitration findings is not limitless." *City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212, 1216 (Nev. 2002). The party seeking to assert issue preclusion has the burden of proving the preclusive effect of the judgment. *Id.*

Defendants have failed to carry this burden. Defendants contend that the Ninth Circuit's opinion in *White v. City of Pasadena*, 671 F.3d 918 (9th Cir. 2012) signaled a sea change in courts' understanding of the preclusive effect of arbitration under collective bargaining agreements. This stretches *White* too far. In *White*, the relevant issue was whether a court-reviewed administrative proceeding that resulted in the plaintiff White's termination was entitled to preclusive effect in her later discrimination lawsuit. The court first noted that state court review conferred the status of a state court judgment on the administrative proceedings and that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *White*, 671 F.3d at 926 (quoting *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984)). Then, after examining California law, the *White* court concluded that California courts would accord the administrative proceeding preclusive effect. From these facts, Defendants infer that *White* reflects "a departure from those cases that refused to apply a labor arbitrator's factual findings as dispositive of statutory rights." (Defendants'

1  Motion #22, p. 16:7-8.)

2      This conflates the rules applicable to reviewed arbitral proceedings with those applicable to

3  unreviewed arbitral proceedings. The *White* court did not mention "those cases that refused to apply

4  a labor arbitrator's factual findings as dispositive of statutory rights," and the omission would be

5  curious if *White* makes the great leap that Defendants claim it does. The cases Defendants have in

6  mind are cases like *Alexander v. Gardner–Denver Co.,* 415 U.S. 36 (1974), *Barrentine v.*

7  *Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), and *McDonald v. City of W. Branch, Mich.*,

8  466 U.S. 284 (1984). These cases concern unreviewed arbitral decisions. *See Gardner-Denver Co.*,

9  415 U.S. at 38; *Barrentine,* 450 U.S. at 733-34; *McDonald*, 466 U.S. at 286. Yet as the *White* court

10  explained, "[a]lthough different preclusion rules apply in some circumstances to *unreviewed*

11  findings of administrative proceedings, [the full faith and credit statute, 28 U.S.C.] section 1738 by

12  its own terms applies when administrative findings have been reviewed by state courts of general

13  jurisdiction." 671 F.3d at 926 (citation omitted). In addition, the court observed that a limited

14  exception to section 1738—when "judgments [are] rendered in proceedings that fail to comply with

15  the minimum standards of due process"—did not apply. *Id.* Therefore, the administrative

16  proceedings were afforded the same preclusive effect under section 1738 as any other California

17  state court judgment.

18      The same goes here. As in *White*, Baldazo's arbitral decision has been confirmed by a state

19  court. Therefore, this court is required to accord the decision the same preclusive effect as a Nevada

20  state court would.[2] *Id.* In *City of Reno*, the Nevada Supreme Court considered the application of

21

22

---

23      [2] There is no indication that the arbitral proceedings here failed to comply with the minimum
   standards of due process. The proceedings were adversary in nature, both parties were represented by
24  counsel, both parties presented witness testimony under oath, and the law-trained decision-maker
   issued a careful thirty-two page written opinion. See *United States v. Utah Const. & Min. Co.*, 384 U.S.
25  394, 422 (1966) (identifying "an adequate opportunity to litigate" as one of the minimum standards of
26  due process).

issue preclusion under Nevada law to an arbitral decision.[3] While beginning with the premise that issue preclusion "applies to arbitration," the Court immediately qualified that "when a collective bargaining agreement is at issue, the arbitrator's award 'must be based on the collective bargaining agreement.'" 59 P.3d at 1216. Turning to the terms of the CBA before it, the Court found that the agreement excepted the relevant issue (whether the City had engaged in a certain unfair labor practice) from the arbiter's authority. *Id.* ("Under the contract, the arbitrator had jurisdiction to determine if just cause existed to discipline the officers, but not to determine whether the City engaged in an unfair labor practice.") Therefore, despite the fact that the arbiter had ruled on this issue, the arbiter's decision was not entitled to preclusive effect.

Baldazo's arbitration thus does not preclude this court from addressing her discrimination claims. First, the CBA excepts violations of its non-discrimination provision—and violations of federal anti-discrimination law—from the arbiter's authority. Therefore, under *City of Reno*, the arbiter's decision with respect to discrimination is not entitled to preclusive effect. Perhaps anticipating this result, Defendants argue that Baldazo "waived" her right to have a court hear her discrimination claims in the first instance by raising the issue of discrimination in arbitration. But this argument fails too. Indeed, the arbiter recognized his limited authority throughout his findings, noting that "the Impartial Arbitrator's review with regard to any claim of alleged discrimination visited upon Baldazo is limited to whether there was just cause for her termination from employment." (Defendants' Motion #22, Ex. 1 at p. 28 n. 5.) The arbiter was without power to decide Baldazo's discrimination claims, whether or not she raised them in arbitration. Under *City of Reno*, that is all that matters.

///

---

[3] Technically, the Court considered the preclusive effect of an arbitral decision on a later administrative proceeding. Because the Court's reasoning is general, and because the Court provided no indication that its holding would differ in the context of a later judicial proceeding, *City of Reno* governs the facts here.

**B.  Summary Judgment**

Still, most of Baldazo's discrimination claims (under both Title VII and the Fourteenth Amendment) must fail. Claims of gender discrimination under Title VII are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff may establish a prima facie case of discrimination by showing that she was a member of a protected class, that she was qualified for her job, that she suffered an adverse employment action, and that similarly situated non-members of the protected class received better treatment. *See Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002). Once the plaintiff has established a prima facie case, the defendant may rebut it with evidence that the adverse employment action was not taken for impermissibly discriminatory reasons. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Finally, the burden shifts to the plaintiff to demonstrate that the defendants' proffered nondiscriminatory reasons are merely a pretext for discriminatory motive. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994). Courts apply a similar burden-shifting analysis to claims of gender-based employment discrimination brought under the Equal Protection Clause to the Fourteenth Amendment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010).

Assuming Baldazo's Complaint states a prima facie case of gender-based employment discrimination (which includes discrimination on the basis of gender stereotypes, *see Jespersen v. Harrah's Operating Co., Inc.*, 392 F.3d 1076, 1082 (9th Cir. 2004) *on reh'g en banc,* 444 F.3d 1104 (9th Cir. 2006)), Defendants have produced evidence of legitimate, non-discriminatory reasons for Baldazo's termination, and Baldazo has failed to produce any evidence in rebuttal. For example, Defendants have produced unrebutted evidence that Baldazo was insubordinate (for failing to wear her uniform) and untruthful (for lying to her superiors). In response, Baldazo is silent. Baldazo has therefore failed to provide "specific and substantial" evidence of pretext creating a genuine issue of material fact with respect to her discrimination claims. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002). Summary judgment on

1    Baldazo's termination-based claims is appropriate.

2          Baldazo's retaliation claim fares similarly. In order to establish her retaliation claim,

3    Baldazo must show that she engaged in protected activity, suffered an adverse employment action,

4    and that the protected activity and the adverse employment action were causally related. *Stegall v.*

5    *Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). However, Baldazo's Complaint does not

6    allege that she engaged in any protected activity, let alone that this protected activity caused an

7    adverse employment action. Therefore, this claim fails.

8          Baldazo's state law claim for negligent training rests on the inference that, because Hester

9    and other defendants allegedly behaved badly, they must have been trained negligently. Under

10   Nevada law, a plaintiff may recover for negligent training if she demonstrates "(1) a general duty

11   on the employer to use reasonable care in the training and/or supervision of employees to ensure

12   that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Okeke v. Biomat USA,*

13   *Inc.*, --- F. Supp. 2d --- , 2013 WL 684919, at *5 (D. Nev. Feb. 25, 2013). Yet "[a]n employee's

14   wrongful behavior does not in and of itself give rise to a claim for negligent training and

15   supervision." *Id*. Baldazo's claim for negligent training rests solely on the wrongful behavior of

16   Defendants' supervisory employees: Baldazo does not allege facts that give rise to an inference that

17   Elko County higher-ups knew or should have known of Hester's behavior, nor does Baldazo allege

18   any facts concerning the training of sheriff's deputies beyond "Defendant County of Elko has failed

19   to exercise reasonable care in the training of its personnel." Such conclusory allegations are

20   powerless to overcome a motion to dismiss, let alone a motion for summary judgment. *See Ashcroft*

21   *v. Iqbal*, 556 U.S. 662, 678 (2009). Finally, in the face of Defendants' evidence that each of Morton

22   and Keema's actions were justifiable on nondiscriminatory grounds, Baldazo has failed to present

23   evidence in rebuttal. There is, therefore, no genuine issue of material fact with respect to Baldazo's

24   negligent training claim. Summary judgment is appropriate.

25         This result implies that Baldazo's claim against Elko County for deliberately indifferent

26   training must also fail. To succeed on such a claim, Baldazo must show that the failure to train was

1    Elko County's deliberate choice, that the failure to train reflected deliberate indifference to the

2    constitutional rights of its employees, and that the failure to train actually caused a deprivation of

3    Baldazo's constitutional rights. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1194 (9th Cir.

4    2002). Baldazo has alleged nothing beyond the words "deliberately indifferent" in relation to Elko

5    County's training of its sheriff's deputies. While Baldazo does allege that a male deputy avoided an

6    internal investigation after his arrest for domestic battery, this allegation falls far short of a pattern

7    of constitutional violations or circumstances indicating that the "need for more or different training

8    is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

9    policymakers of the [county] can reasonably be said to have been deliberately indifferent to the

10   need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). More importantly, Defendants

11   have explained the male deputy's treatment in non-discriminatory terms, and Baldazo has failed to

12   come forward with any evidence suggesting otherwise. Summary judgment on this claim is

13   therefore appropriate.

14          On the other hand, Baldazo has stated a claim for discrimination by virtue of a hostile

15   working environment under Title VII. In order to recover for this claim, the plaintiff must show that

16   (1) she was subjected to unwelcome harassment (2) because of her sex, and (3) the conduct was

17   sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

18   work environment. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir.

19   2008). While Defendants concentrate their Motion on Baldazo's termination, they do not address

20   Baldazo's allegations relating to severe or pervasive harassment, in particular by defendant Hester.

21   Baldazo alleges, for instance, that Hester repeatedly used sexist language like "chick" to describe

22   women; that Hester, acting from sexist animus, scheduled fewer deputies than normal to work with

23   Baldazo on New Year's Eve; that Hester formally disciplined Baldazo for failing to take interest in

24   elk scouting. Together, these allegations give rise to a genuine issue of material fact that Hester's

25   conduct was so severe or pervasive as to alter Baldazo's conditions of employment. *See also Davis*

26   *v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008) (holding that, where the severity of the

1    conduct is questionable, "it is more appropriate to leave the assessment to the fact-finder than for

2    the court to decide the case on summary judgment"). Therefore, this claim—and this claim

3    alone—survives summary judgment.

4    **IV.**    **Conclusion**

5         The court is not precluded from hearing Baldazo's discrimination claims, but her failure to

6    produce any evidence with respect to these claims means that most of them fail.

7         IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings or,

8    in the Alternative, Motion for Summary Judgment (#22) is GRANTED in part and DENIED in

9    part.

10         IT IS FURTHER ORDERED that the parties shall submit a proposed joint pretrial order

11    within thirty (30) days from entry of this Order.  *See* Local Rule 16-4 and 26-1(e)(5).

12         IT IS SO ORDERED.

13         DATED this 13th day of September, 2013.

14

15        _____

     LARRY R. HICKS

16        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26